Rockingham, }
Dec. 5, 1933. }

MARY O'BRIEN *v.* JOHN C. DONOHOE.

EDWARD P. BIGLEY *v.* SAME.

*Sleeper & Perkins*, for the plaintiffs.

*Wyman, Starr, Booth & Wadleigh* and *Sullivan & Sullivan*, for the defendant, furnished no brief.

WOODBURY, J. The plaintiffs, while walking north along the easterly side of Ocean Boulevard in Hampton were struck from behind and injured by a hit-and-run driver. They were both rendered unconscious at the time of the accident and no one saw the driver of the car which hit them. The accident happened about 12:15 on the morning of July 26, 1931.

The defendant admitted that it was his car which struck the plaintiffs but denied that he was driving it at the time, his contention being that it had been stolen from him shortly before the accident. The question raised by the motions for a nonsuit and for a directed verdict is whether there is evidence in the case sufficient to warrant the jury in finding that the defendant was operating his car at the time of the accident.

The defendant arrived in his car in the vicinity of Hampton during the latter part of the afternoon of July 25, 1931. Various witnesses testified as to his movements from that time until about eleven o'clock

that night when he was seen sitting in his car which was headed south on the Ocean boulevard about half a mile south of the Rye Beach coast guard station. This point is about four and three quarter miles north of the scene of the accident. By his own admissions, he was then, as he had been for the greater part of the evening, in a somewhat intoxicated condition.

The next witness who definitely testified to having seen the defendant was a coast guardsman who found him about five minutes past two o'clock in the morning of July 26. He was then in an intoxicated condition wandering in a field near the Rye Beach coast guard station.

Not long after daylight on the morning of July 26, the defendant's car, damaged as to front bumper, headlights, and radiator was found by the police in a lane northwest of, and about two miles from, the scene of the accident. Two witnesses testified to having seen this car when it was driven to the place where it was found, one of whom placed the time as "at least midnight," the other at about quarter before one in the morning of July 26. The sole occupant of this car at the time it was left in the lane was a man in an intoxicated condition, dressed in a light grey suit, black and white sport shoes, and without a hat. The defendant was similarly dressed on the night of the accident, and was without a hat when found by the coast guard. His hat was later found in his car.

The two witnesses above referred to persuaded the driver of the defendant's car to drive it no further that night. They took him in their car back onto Ocean boulevard and up the boulevard toward Rye, leaving him at a point about one and one half miles south of the coast guard station. There is no direct testimony as to the time when these witnesses set their passenger down. The evidence as to the time when they left the lane with their passenger, although vague, may be interpreted in such a way as to indicate that they left him on the beach early enough to have permitted him to walk to the coast guard station by two A. M. Neither of these witnesses were able to state definitely that the man they saw driving the defendant's car was the defendant, nor yet were they able to state definitely that he was not the defendant.

The defendant's version of his conduct at about the time of the accident is that he left the vicinity of the coast guard station about eleven P. M. and drove down to the casino at Hampton beach, a distance of approximately four and three quarter miles; that he remained at the casino about fifteen minutes and then drove back up Ocean boulevard to a point about half a mile south of the coast

guard station when he parked his car beside the highway, leaving the key in the ignition lock. He then testified that he went down onto the beach where he consumed the remaining contents of a bottle of whiskey which he had with him, and then walked up the beach to the coast guard station where he was later found, as testified to by the coast guard patrolman.

The jury was not compelled to accept the defendant's version of his conduct between the hours of eleven P. M. on the night of July 25, and two A. M. in the morning of July 26, even though that is the only direct testimony on the subject. They were at liberty to conclude that he was deliberately testifying falsely, or that he was too intoxicated to have any recollection worthy of the name. The similarity in dress and condition between the defendant and the person who drove his car into the lane, coupled with the physical possibility that the defendant might then have been driving his car, was sufficient to warrant the inference that the defendant himself drove his car into the lane where it was later found. There being evidence that the defendant was in possession of his car almost immediately after the accident, the further inference might be drawn that he was driving his car when it ran against the plaintiffs. This inference is further strengthened by the defendant's testimony concerning his trip to the casino after eleven o'clock on the night of July 25. This trip would twice take him past the scene of the accident, his passage north being at about the time of the accident.

The issue of the defendant's identity with the driver of the car which struck the plaintiffs was properly submitted to the jury.

Some of the defendant's exceptions to the introduction of evidence were cured by the court's instruction to the jury to disregard the testimony objected to. No suggestion was made at the trial that this procedure was not adequate to protect the defendant's rights. The remaining exceptions, not thus cured, appear to be without merit.

The portions of the plaintiffs' argument to which exceptions were taken were warranted by the evidence.

The defendant's requests for instructions were granted in substance with the exception of one. This request dealt with the question of damages. The evidence as to damages has not been printed and in the absence of that testimony the accuracy of the request cannot be passed upon.

*Judgments on the verdicts.*

All concurred.